SHER TREMONTE LLP

February 8, 2018

**BY ECF**

The Honorable Stewart D. Aaron
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Dmitry Sazonov*, 17 Crim. 657 (SDA)

Dear Judge Aaron:

    We write on behalf of our client, Dmitry Sazonov, in opposition to the government's request, included in its sentencing memorandum, Gov't Sentencing Mem., Dkt. #29 (Jan. 23, 2018), that the Court impose restitution in the amount of $156,255.22, payable to Susquehanna International Group, LLP ("SIG"). *See id.* at 8-10. As explained in more detail below, the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, and governing caselaw dictate that no restitution order may be issued in this case.

*Background*

    As the Court is aware, Mr. Sazonov was an employee of SIG from 2004 until his termination in 2017. *See* Sentencing Submission of Dmitry Sazonov 6, Dkt. #26 (Jan. 18, 2018). During his tenure with the company, Mr. Sazonov was instrumental in developing its main trading platform, originally called "Boss" and later renamed "Soqrates." *Id.* The trading platform that Mr. Sazonov developed contributed to SIG's success and bottom line. Mr. Sazonov was not compensated, however, based on the financial benefits that accrued to the company from his work, but rather with a salary that never increased above $150,000 and annual bonuses ranging from approximately $15,000 to $80,000. *Id.* at 7.

    In early 2017, following the resignation of the trader with whom Mr. Sazonov principally worked, the company made the decision to terminate him. This decision was made prior to the payout of 2016 bonuses, and accordingly Mr. Sazonov did not receive any bonus for his work that year. On February 6, 2017, Mr. Sazonov learned he would likely be terminated. Prior to Mr. Sazonov's termination, he transferred some company data into his personal files, deleted the files, and then transferred them again, repeating this process several times. That afternoon, he was terminated and escorted from the building. Subsequently, Mr. Sazonov returned to the SIG office and attempted to access

his computer, despite the fact that he was aware he no longer had authorized access to the computer, in order to delete the company data stored among his personal files. He did not, ultimately, access the computer.

On April 12, 2017, Mr. Sazonov was arrested and charged by criminal complaint with theft of trade secrets, in violation of 18 U.S.C. § 1832. The government declined to prosecute Mr. Sazonov for this offense, however, and on October 25, 2017, he pled to a misdemeanor information charging him with violating the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2)(C), (b), and (c)(2)(A), based solely on his attempted unauthorized access of SIG's computer. As part of his plea agreement, Mr. Sazonov agreed to pay restitution in an amount to be determined by the Court.

On January 25, 2018, this Court sentenced Mr. Sazonov to three years' probation. *See* Judgment, Dkt. #33 (Jan. 25, 2018). The Court deferred decision on restitution and ordered the parties to address "(a) whether the attorneys' fees and expenses that comprise the restitution amount requested by the Government fall within 18 U.S.C.§ 3663A(b)(4); and (b) whether the amount requested is appropriate." Order, Dkt. #32 (Jan. 25, 2018).

*Governing Law*

The MVRA, enacted in 1996 and codified at Title 18, United States Code, section 3663A, "makes restitution mandatory for certain categories of crimes that inflict physical injury or property loss on their victims." *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015). The statute defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2); *see United States v. Archer*, 671 F.3d 149, 171 (2d Cir. 2011). A court's "statutory authority to award restitution under the MVRA is limited to awards to victims of the offense of conviction." *In re Local #46 Metallic Lathers Union & Reinforcing Iron Workers & Its Associated Benefit & Other Funds*, 568 F.3d 81, 85–86 (2d Cir. 2009) (per curiam) (citing *Hughey v. United States*, 495 U.S. 411, 416-19 (1990)).

In *Hughey*, which addressed the prior version of the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3579, the Supreme Court restricted the award of restitution to the limits of the offense of conviction. *Hughey*, 495 U.S. at 416-19. The Second Circuit has repeatedly extended *Hughey* to the MVRA context, holding that the relevant question in imposing restitution under the MVRA is whether the "loss [is] caused by the *specific conduct that is the basis of the offense of conviction*." *United States v. Oladimeji*, 463 F.3d 152, 158-59 (2d Cir.2006) (emphasis added); *accord In re Local #46*, 568 F.3d at 86; *see also United States v. Akande*, 200 F.3d 136, 141 (3d Cir.1999) (holding that "[t]he conduct underlying the offense of conviction thus stakes out the boundaries of the restitutionary authority" under the MVRA). Accordingly, the Circuit has held, "restitution is not permitted for loss caused by 'relevant conduct,'" even

where such conduct might be relevant to sentencing under section 1B1.3 of the U.S. Sentencing Guidelines. *United States v. Vilar*, 729 F.3d 62, 97 (2d Cir. 2013).

The MVRA permits the Court to "reimburse the victim for lost income and necessary . . . other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3664A(b)(4). While the Second Circuit has held that incurring legal fees may be a "necessary" expense under the MVRA where such expenses are required to protect the interests of the victim, including "the integrity of its ongoing operations and reputation," *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014), the Circuit has vacated restitution orders that compensate victims for "gratuitous" expenses that "serve[] no investigatory purpose." *Id.* Indeed, "to be 'necessary' for restitution, it is not enough that the expenses incurred *helped* the investigation." *United States v. Cuti*, 778 F.3d 83, 95 (2d Cir. 2014). Rather, the expense must be based on a "duty" on the part of the victim to protect its interests "when faced with evidence, indicia, or a grounded suspicion of internal misconduct, and the investigation was a means calculated to achieve the protection of those interests." *Maynard*, 743 F.3d at 381.

*Discussion*

> I. SIG's Expenses Do Not Derive from the Offense of Conviction, and Thus Are Not Compensable Under the MVRA

The offense of conviction here consists exclusively of Mr. Sazonov's attempt to access his work computer at SIG without authorization after he was terminated. That was the crime with which the government ultimately decided to charge Mr. Sazonov, the crime to which he pled, and the extent of his plea allocution. The extensive investigatory work undertaken by SIG's counsel, WilmerHale, including its retaining a forensic firm, K2 Intelligence, plainly derives from the alleged (and unproven) theft of trade secrets count originally charged. The government argues in its sentencing submission that this conduct is "relevant to the crime of conviction." Gov't Sentencing Mem. at 5 n.5. However, that is not the test for restitution. To the contrary, "restitution is not permitted for loss caused by 'relevant conduct,'" *Vilar*, 729 F.3d at 97, and accordingly, any expenses incurred by SIG to investigate conduct that is not essential to the crime of conviction is non-compensable under the MVRA.

In *In re Local #46*, the defendant pled guilty to money laundering conspiracy and admitted that he planned to use the proceeds to pay employees in cash, thus avoiding taxes and union obligations. 568 F.3d at 86. The union argued that it was entitled to restitution because part of the defendant's scheme was a plan to defraud it and deprive it of moneys owed to it under collective bargaining agreements. The Second Circuit rejected that argument because "the only criminal charge that the Government brought and of which [the defendant] stands convicted is conspiracy to engage in money laundering." *Id.* Similarly, here, while SIG claims harm from the attempted theft of

trade secrets (which, unlike the conduct in *In re Local #46*, was *not* included in Mr. Sazonov's plea allocution), the only crime of which Mr. Sazonov stands convicted is the attempted access of his computer by re-entering the office after his termination. SIG has provided the Court with no basis to conclude that its investigation, including its hiring of a forensic investigation firm, concerns that crime. Indeed, it strains credulity to suggest that the extensive efforts undertaken by WilmerHale and K2 derive from the crime of conviction, which was observed by SIG employees.

Accordingly, the Court should hold that SIG is not entitled to restitution. Alternatively, the Court should hold a hearing to determine which of SIG's expenses relate to the crime of conviction and which are improperly derived from relevant conduct. *See* 18 U.S.C. § 3664(e) (describing procedures for resolving disputes as to the proper amount or type of restitution).

    II.    <u>SIG's Expenses Were Not Necessary to Protect Its Interests</u>

The Court should further hold that the proper restitution amount is zero, because the costs of helping the U.S. Attorney's Office to bring a criminal prosecution of Mr. Sazonov were not necessary expenses for SIG. As part of Mr. Sazonov's employment, he signed and was subject to a non-disclosure agreement ("NDA"). Even if Mr. Sazonov had in fact taken proprietary information from SIG, which he did not, that NDA would have prevented him from sharing that information with any other trading firm, and no firm would have accepted the information from him (or, certainly, offered him employment based on his possession of such proprietary information). SIG's decision to pursue a criminal prosecution was "gratuitous" and not necessary to protect its interests. *Maynard*, 743 F.3d at 381.

In *Maynard*, the victim bank put up wanted posters with pictures of the defendants who had previously robbed it, and hired an additional security guard. These measures, the Second Circuit held, were unnecessary: "The crime had been committed; there was no especial likelihood that this bank would again be the victim of the same robbers; the police had an ongoing investigation and did not seek the bank's cooperation . . . and the bank had no interest to protect by an independent investigatory effort—and certainly had no duty to undertake it." *Id.* Here, similarly, SIG's duty to protect its interests was fully accomplished by terminating Mr. Sazonov, ensuring that he could not access SIG's computers and barring him from the building. As there was no basis to conclude that Mr. Sazonov took company property, no other measures were necessary to protect SIG's interests.[1]

---

[1] To the extent the government and SIG argue that Mr. Sazonov continued to attempt to obtain proprietary information from SIG through his communications with the company's human resources representatives, those communications were part of a sting operation set up by the company's legal counsel and the FBI – the costs of which the company now seeks to have the Court impose on Mr. Sazonov.

As in *Maynard*, there is "no plausible showing" that Mr. Sazonov would attempt to enter the building and access his computer again. Accordingly, pursing a criminal prosecution was unnecessary within the meaning of § 3663A(b)(4), and SIG's efforts in such pursuit are non-compensable under the MVRA.

### III. If the Court Orders Restitution, It Should Consider Mr. Sazonov's Insolvency and Inability to Pay a Lump Sum

Should the Court order restitution, 18 U.S.C. § 3664 requires it to consider: "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents. 18 U.S.C. § 3664(f)(2)(A)." The statute also authorizes the Court to

> direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

*Id.* § 3664(f)(3)(B).

As noted in the PSR, Mr. Sazonov has a negative monthly cash flow and cannot presently meet his monthly financial obligations. PSR ¶ 67 & n.2. In other words, at this time Mr. Sazonov cannot meet his obligation to provide for his wife, who recently lost her job, and their three children. The restitution order sought by the government and SIG in this case is a devastating sum for a person in Mr. Sazonov's financial situation, and to order a lump sum payment would require him either to completely liquidate his retirement savings, earned over two decades of hard work, or sell the home that shelters his family.

Accordingly, should the Court order restitution in the amount sought by the government and SIG, we respectfully request that the Court make such restitution payable on a plan that takes Mr. Sazonov's financial condition into consideration.

*Conclusion*

      For the foregoing reasons, the Court should decline to issue the restitution order sought by the government.

                                  Respectfully submitted,

                                  /s/
                                Michael Tremonte
                                Noam Biale
                                SHER TREMONTE LLP

                                *Attorneys for Dmitry Sazonov*

cc:     Assistant U.S. Attorney Katherine Reilly (by ECF)
         Brendan McGuire (by email)